UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER BELEGRINOS,
                            Plaintiff,

-v-

UNITED STATES OF AMERICA,
                            Defendant.

18-CV-1934 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Peter Belegrinos has brought this *pro se* action against the United States ("the Government") to obtain a declaration that he has lost his United States citizenship and an order directing that he be deported from the United States to Greece. (Dkt. No. 20 ("AC") at 16.) The Government has moved to dismiss Belegrinos's operative Amended Complaint. (Dkt. No. 24.) For the reasons that follow, the motion to dismiss is granted.

**I.    Background**

      The following factual allegations are taken from Belegrinos's Amended Complaint and exhibits attached thereto, and are assumed to be true for the purposes of deciding the instant motion.

      Belegrinos is a citizen of the United States by birth. (AC ¶ 40.) In 2006, he moved to Greece and applied for Greek citizenship, with the intention of renouncing his U.S. citizenship. (AC. ¶ 42.) His naturalization application was approved by Greece, and he became a Greek citizen on March 9, 2006. (AC ¶ 44.)

      In July 2012, however, Belegrinos was extradited to the United States from Holland on a New York state criminal charge of attempted sexual abuse in the first degree. (AC ¶¶ 56, 60; Ex.

1

D.[1]) In November 2012, he pleaded guilty to the charge and was sentenced to a two-year term of imprisonment and a five-year term of parole. (AC ¶ 60; Ex. N.) After the completion of his prison term, his parole expired on February 15, 2018. (*Id.*) Belegrinos alleges that he is not able to leave the United States due to restrictions placed by a Strict and Intensive Supervision and Treatment Order ("SIST Order") issued under the New York Mental Hygiene Law, N.Y. Mental Hyg. Law, § 10.11. (AC ¶ 30; Ex. OO.)

In early 2014, Belegrinos, through his counsel Robinson Iglesias, requested a certificate of loss of nationality ("CLN") from the United States Department of State ("State Department"). (AC ¶ 8; Ex. W.) In a letter dated March 21, 2014, Belegrinos admitted that he "did not follow the formalities required by the Immigration and Nationality Act in 2006 by appearing in person before a U.S. consular or diplomatic officer, in a foreign country, and signing an oath of renunciation," but he requested that the State Department "consider his voluntary action to apply for Greek citizenship with the intention of relinquishing his U.S. citizenship along with the documents attached [to the letter] as basis for granting his loss of U.S. nationality." (Ex. W at 93.[2]) In support of his position, Belegrinos attached, among other documents, a "Request for Determination of Possible Loss of United States Citizenship" ("Form DS-4079") (Ex. W at 95–99) and a "Statement of Understanding Concerning the Consequences and Ramifications of Renunciation or Relinquishment of U.S. Nationality" ("Form DS-4081") (Ex. W at 101–02).

On April 21, 2014, a State Department official wrote back to Iglesias, informing him that, to comply with the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101–1537, the State

---

[1] The Court refers to the exhibits attached to the Amended Complaint.

[2] The Court uses the pagination assigned by ECF when citing specific pages in the exhibits attached to the Amended Complaint.

Department could not approve Belegrinos's CLN application until it had received a "written opinion of a consular or diplomatic officer assigned to a U.S. embassy or consulate abroad" that Belegrinos had voluntarily expatriated himself.  (Ex. Z.)  Therefore, the State Department official returned Belegrinos's application materials and recommended that he make an appointment with a U.S. embassy or consulate abroad.  (*Id.*)  Iglesias relayed the State Department's response to Belegrinos and advised him that he would request reconsideration but that Belegrinos would in any event be able to make the expatriation request at a U.S. consulate office following his release from New York state custody.  (Ex. AA.)

Thereafter, Iglesias wrote another letter dated July 24, 2014, to the State Department inquiring into Belegrinos's expatriation.  (*See* Ex. BB.)  In response, another State Department official told Iglesias that the State Department did not have any record of Belegrinos's expatriation, and that Belegrinos should contact U.S. Citizenship and Immigration Services ("USCIS") if he intended to "renounc[e] his citizenship in the United States pursuant to INA Section 349(a)(6)," the statutory vehicle for renouncing one's citizenship from within the United States.  (*Id.*; *see also* AC ¶¶ 14–16*.*)

Three years later, Belegrinos made another request—this time to USCIS—to renounce his U.S. citizenship pursuant to Section 349(a)(6).  (*See* Ex. NN (referencing Belegrinos's April 28, 2017 request to renounce his U.S. citizenship).)  After interviewing Belegrinos, USCIS requested that he produce documents demonstrating that he was not prohibited by any court or government restrictions from leaving the United States.  (*Id*.)  Belegrinos does not allege whether

he has provided the requested documents to USCIS. USCIS has not yet rendered a decision on Belegrinos's expatriation application. (Dkt. No. 30 at 227.)[3]

On March 1, 2018, Belegrinos brought this *pro se* action against the Government, seeking a declaration that he is not a citizen of the United States and an order that he be expeditiously removed from the United States to Greece. The Government moved to dismiss Belegrinos's Complaint on July 13, 2018. (Dkt. No. 12.) In response, Belegrinos filed an Amended Complaint, which mooted the Government's motion to dismiss. (Dkt. Nos. 20, 31.) Thereafter, the Government filed a new motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction and for failure to state a claim. (Dkt. No. 24.) The briefing is now complete, and this motion is ripe for resolution. (*See* Dkt. Nos. 25, 30, 35.)

## II. Legal Standard

A district court must dismiss a claim for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)); *see also* Fed. R. Civ. P. 12(b)(1). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[3] "[I]n light of the policy permitting courts to consider facts alleged for the first time in a *pro se* plaintiff's opposition to a motion to dismiss," the Court finds it appropriate to consider additional exhibits filed by Belegrinos with his opposition insofar as they are consistent with the Amended Complaint. *Elliott v. Nestle Waters N. Am. Inc.*, No. 13 Civ. 6331, 2014 WL 1795297, at *7 (S.D.N.Y. May 6, 2014); *see also Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246–47 (S.D.N.Y. 1998) (adopting report and recommendation).

544, 570 (2007). A claim is facially plausible when a plaintiff pleads facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (quoting *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 214 (2d Cir. 2003)). "A complaint is . . . deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

A complaint filed by a *pro se* litigant "must be construed liberally to raise the strongest arguments it suggests." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets and internal quotation marks omitted). "Nonetheless, a complaint must contain 'factual allegations sufficient to raise a right to relief above the speculative level,' including 'an allegation regarding [each] element necessary to obtain relief.'" *Haughton v. Clinton*, No. 15 Civ. 1160, 2015 WL 9244398, at *1 (S.D.N.Y. Dec. 17, 2015) (alteration in original) (quoting *Blanc v. Capital One Bank*, No. 13 Civ. 7209, 2015 WL 3919409, at *2 (S.D.N.Y. June 24, 2015)).

### III. Discussion

Belegrinos seeks a declaration that he is not a citizen of the United States and an order that he be expeditiously removed from the United States to Greece. (AC ¶ 79.) Consistent with this Court's duty to liberally construe and interpret a *pro se* litigant's submissions "to raise the

5

strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), the Court reads Belegrinos's submissions as asserting claims under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*. As such, the Court first lays out the statutory and regulatory framework for expatriation. Then the Court addresses Belegrinos's request for a writ of mandamus. Finally, the Court discusses Belegrinos's APA challenges.

### A. Statutory and Regulatory Framework for Expatriation

Section 349 of the INA provides that "a national of the United States whether by birth or naturalization, shall lose his nationality by voluntarily performing any [one] of [seven specified] acts with the intention of relinquishing United States nationality," *id.* § 1481(a). Subsections (a)(1) through (a)(7) codify these seven acts. *See id.* § 1481(a)(1)–(a)(7). Belegrinos's attempts to petition the State Department here arose under subsection (a)(1), which provides that an individual "shall lose his nationality by voluntarily[,] . . . [and] with the intention of relinquishing United States nationality[,] . . . obtaining naturalization in a foreign state upon his own application or upon an application filed by a duly authorized agent, after having attained the age of eighteen years." *Id.* § 1481(a)(1). Furthermore, the expatriation act under subsection (a)(1) has to be performed outside the United States.[4] *Id.* § 1483(a).

Even after an individual performs the expatriation act under subsection (a)(1), that person's loss of U.S. citizenship does not become final until the Secretary of State ("the Secretary") approves a CLN on the basis of a report filed by a U.S. diplomatic or consular officer

---

[4] Belegrinos made a separate expatriation request to USCIS under § 1481(a)(6) (Dkt. No. 30 ¶¶ 29–31), which permits renunciation to take place in the United States, 8 U.S.C. § 1483(a).

6

attesting to facts that have led the officer to believe that the person has lost his or her U.S. citizenship while in a foreign country. *Id.* § 1501.

To administer the CLN approval process, the Secretary has promulgated regulations in accordance with the authority granted by the INA. *See id.* § 1104(a).

Under these regulations, the Secretary presumes that a person intends to retain U.S. citizenship even if he or she naturalizes in a foreign country. 22 C.F.R. § 50.40(a). The person can rebut that presumption, however, by affirmatively asserting to a consular officer that it is his or her intent to relinquish U.S. citizenship. *Id.* Once the person has done so—or once the consular officer otherwise has reason to believe that the person while in a foreign country has lost his or her United States nationality—the officer is required to submit a CLN, along with any supporting documents or affidavits to the Secretary for approval. 8 U.S.C. § 1501; 22 C.F.R. § 50.40. The Secretary's approval of the CLN constitutes the final administrative determination of one's loss of U.S. citizenship. 8 U.S.C. § 1501.

### B. Writ of Mandamus

Belegrinos first requests a writ of mandamus, that is, an order that he be "expeditiously removed from the United States to Greece . . . because he alleges [that] he has submitted an application to the U.S. Department of State for relief pursuant to 8 U.S.C. § 1481(a)(1)." (AC ¶ 33.) His Amended Complaint may also be construed liberally as seeking an order that the State Department issue him a CLN. (*See* AC ¶ 34.) The Government argues that Belegrinos is not entitled to any mandamus relief because the Government does not owe him any "clear, nondiscretionary duty" to remove him or to issue him a CLN. (Dkt. No. 25 at 13; *see also id.* at 12–14.)

The federal mandamus statute empowers this Court "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C.

§ 1361. Given its "drastic" nature as a remedy, *Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394, 402 (1976), "[m]andamus may be awarded only if the plaintiff proves that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available," *Benzman v. Whitman*, 523 F.3d 119, 132–33 (2d Cir. 2008); *Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (observing that mandamus is appropriate only if "the defendant owes [the plaintiff] a clear nondiscretionary duty").

With respect to his mandamus claim for expedited removal, Belegrinos has failed to demonstrate that he has a clear right to such relief. Certainly, the INA requires the Secretary "upon the order of the Attorney General" to effect the removal of certain "deportable aliens." 8 U.S.C. § 1227; *see also id.* § 1229a(a)(1) (providing for removal proceedings to decide "the inadmissibility or deportability of an alien"). But even assuming that a "deportable alien" could enforce this duty against the Secretary under the federal mandamus statute, the INA imposes no duty on the Secretary to remove U.S. citizens. And Belegrinos has not shown that he has lost his U.S. citizenship because he has not yet obtained a "final administrative determination" of his loss of citizenship in the form of a CLN. *Id.* § 1501. Since Belegrinos is still a U.S. citizen for purposes of the INA, he has failed to demonstrate that he is entitled to an order of removal.

And to the extent that Belegrinos's mandamus claim seeks only to require the Secretary to issue him a CLN, Belegrinos has not shown that the Government owes him any clear nondiscretionary duty in that respect. Congress has granted the Secretary "discretion to determine whether a [CLN] should be issued." *Lozada Colon v. U.S. Dep't of State*, 170 F.3d 191, 191 (D.C. Cir. 1999) (per curiam); *see also* 8 U.S.C. § 1501. Indeed, even after a consular official has filed a report certifying facts supporting the belief that a person has renounced his

citizenship, a CLN will not issue until the Secretary of State has approved the report. 8 U.S.C. § 1501. Because the issuance of a CLN is "an act that is within the discretion of the issuing authority," Belegrinos is not entitled to mandamus relief compelling such an act.[5] *Clinton v. Clinton*, No. 10 Civ. 1009, 2010 WL 4828990, at *2 (D.D.C. Nov. 29, 2010).

### C. Administrative Procedure Act

Belegrinos's Amended Complaint can also be liberally construed as asserting two claims under the APA: (1) that the State Department has "unlawfully withheld" Belegrinos's CLN under 5 U.S.C. § 706(1), and (2) that the State Department's refusal to issue Belegrinos a CLN is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under § 706(2)(A).[6] The Court addresses each claim in turn.

Belegrinos's claim that the State Department has unlawfully withheld his CLN fails for the same reason that mandamus is not appropriate here: because the State Department has discretion in approving a CLN application. "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (italics omitted). If the discrete agency action at issue "is not demanded by law," the Court cannot compel such agency action.

---

[5] Similarly, Belegrinos's mandamus request seeking a CLN under § 1481(a)(6) from USCIS fails because USCIS's decision to issue a CLN is a discretionary act. *See Sluss v. U.S. Citizenship & Immigration Servs.*, 899 F. Supp. 2d 37, 41 (D.D.C. 2012).

[6] To the extent that Belegrinos challenges USCIS's adjudication of his § 1481(a)(6) application for being arbitrary and capricious, his claim must be dismissed for lack of final agency action. (Dkt. No. 30 ¶¶ 29–31.) "[T]he APA confers jurisdiction on federal courts to review 'final agency action.'" *Kingston v. Lynch*, 169 F. Supp. 3d 110, 113 (D.D.C. 2016) (quoting 5 U.S.C. § 704). And an agency action is not final if it "does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) (internal quotation marks omitted). Here, USCIS is still reviewing Belegrinos's application and therefore has not yet taken any final agency action. (Dkt. No. 30 at 227.)

*Id.* at 65. Because the INA does not require the State Department to issue Belegrinos a CLN, his claim under § 706(1) must be denied.[7]

Having disposed of Belegrinos's § 706(1) claim, the Court turns to his § 706(2)(A) claim. The APA directs the Court to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Belegrinos's complaint, construed liberally, asserts that the State Department's refusal to issue him a CLN is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* The Government argues that its refusal is not arbitrary and capricious because the INA prohibits Belegrinos from expatriating himself under § 1483(a)(1) while he is still in the United States. (Dkt. No. 25 at 16–19.) And since Belegrinos was still in the United States when he applied for a CLN, the Government goes on, the State Department was justified in denying his CLN application. (*Id.*.) In response, Belegrinos argues that he has already effectively expatriated himself when he naturalized in Greece on March 9, 2006. (Dkt. No. 30 ¶ 19.) According to Belegrinos, no further agency determination was necessary to effectuate his loss of citizenship. (*Id.*)

It is well established that arbitrary-and-capricious review of agency action is narrow. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). As long as the agency's path may be reasonably discerned, a court should uphold the agency action and not substitute its judgment for that of the agency. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009). Nevertheless, "the agency must examine the relevant [facts] and articulate a satisfactory explanation for its action." *State Farm*, 463 U.S. at

---

[7] To the extent that Belegrinos argues that USCIS "unlawfully withheld" his CLN under 5 U.S.C. § 706(1), his claim fails because the INA does not demand USCIS to issue him a CLN.

43. An agency action will survive arbitrary-and-capricious review if it is the "product of reasoned decisionmaking." *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012).

Here, the State Department's refusal to issue Belegrinos a CLN is a reasoned decision fully supported by the surrounding facts and applicable laws. Belegrinos made his initial CLN application in early 2014, while he was still incarcerated in the United States. (AC ¶ 8; Ex. W; *see* Ex. AA (indicating that Belegrinos was held in detention by the State of New York at the relevant time).) In a letter accompanying his application, he admitted that he "did not follow the formalities required by" the INA because he did not appear before a U.S. consular officer in a foreign country to sign an oath of renunciation. (Ex. W at 93.) As a result, his forms DS-4079 and DS-4081 lacked the requisite signatures from a consular officer. (Ex. W at 98, 102.)

Thereafter, the State Department returned Belegrinos's application materials, informed him of the procedural deficiency in his application, and recommended that he request an interview with a U.S. consular officer in a foreign country in order to complete his CLN application. (Ex. Z.) In its letter, the State Department explained that the reasoning for its refusal is that 8 U.S.C. § 1501 explicitly authorizes the Secretary to approve a CLN application only upon receiving a written report from a consular or diplomatic officer certifying the facts that underlie the application. (*Id.*) In other words, the State Department was not able to process Belegrinos's CLN application because his application lacked the requisite report from a U.S. consular officer under § 1501.

The State Department's response is a sufficiently reasoned decision because it is in full compliance with the INA. The INA authorizes the Secretary to approve a CLN on the basis of a report filed by a U.S. consular officer abroad. 8 U.S.C. § 1501. The consular officer may file such a report only if he or she has reason to believe that a person has performed a potentially

expatriating act in accordance with the INA. *Id.* Since Belegrinos has not complied with the clear directions of the INA—which he was well aware of (*see* Ex. W at 93)—the State Department's decision to reject his CLN application and direct him to follow the requirements of the INA was not arbitrary and capricious.

Belegrinos argues that he effectively expatriated himself when he naturalized in Greece on March 9, 2006. (AC ¶ 21.) In support of his argument, he contends that 8 U.S.C. § 1488 mandates that "loss of nationality occur immediately upon commission of expatriating acts." (AC ¶¶ 22–26 (quoting *U.S. ex rel. Marks v. Esperdy*, 315 F.2d 673, 676 (2d Cir. 1963)).) The Court disagrees.

Belegrinos reads § 1488 out of its context. Section 1488 provides that "[t]he loss of nationality under [8 U.S.C. §§ 1481–89] shall result solely from the performance by a national of the acts or fulfillment of the conditions specified in [§§ 1481–89]." 8 U.S.C. § 1488. A plain reading of the text suggests that this section concerns *how* a person could lose his or her nationality. Specifically, this section conditions the loss of nationality on "the performance . . . of the acts or fulfillment of the conditions specified in" sections 1481 through 1489. *Id.* For example, in order to satisfy the conditions specified in § 1481(a)(1), one not only has to perform the potentially expatriating act—naturalization in a foreign country—but also has to have done so "voluntarily" and "with the intention of relinquishing United States nationality." *Id.* § 1481(a)(1); *Lozada Colon v. U.S. Dep't of State*, 2 F. Supp. 2d 43, 45 (D.D.C. 1998) (stating that performing a potentially expatriating act without showing voluntariness and the intent to relinquish U.S. citizenship is not enough to renounce one's citizenship); *see also Vance v. Terrazas*, 444 U.S. 252, 261 (1980).

Accordingly, in order to determine whether a person has performed the acts and fulfilled the conditions specified in §§ 1481–89, Congress has set out a mechanism in § 1501 for the State Department to follow and has prescribed that the "[a]pproval by the Secretary . . . of a [CLN] . . . shall constitute a final administrative determination of loss of United States nationality." 8 U.S.C. § 1501. Only after the Secretary has approved the CLN does the loss of citizenship become effective. And at *that* point, as the Government explains, the State Department deems the loss of citizenship to have occurred upon the commission of the expatriating act. (Dkt. No. 35 at 5.) This reading is also consistent with *United States ex rel. Marks v. Esperdy*, 315 F.2d 673 (2d Cir. 1963), on which Belegrinos relies.[8] In *Esperdy*, the person whose citizenship was at issue had already been served with "a certificate of loss of American citizenship." *Esperdy*, 315 F.2d at 675. Therefore, once the court affirmed the Government's determination that he had lost his U.S. citizenship upon joining the Cuban army, his loss of citizenship related back to the time when he performed that expatriating act. *Id.* But the court's determination that the loss of citizenship occurred at the time of the expatriating act simply has no bearing on the question of what an individual seeking to renounce his citizenship must do in order to prove to the satisfaction of the Government that such an expatriating act has in fact occurred.

In this case, because the Secretary has not yet approved Belegrinos's CLN application in light of his non-compliance with the INA, the Government reasonably concluded that his act of naturalizing as a Greek citizen does not "fulfill[] the conditions" specified in the INA and therefore cannot result in the loss of his U.S. citizenship. 8 U.S.C. § 1488. Even though his loss

---

[8] The other case that Belegrinos relies upon, *United States ex rel. Bauer v. Shaughnessy*, 115 F. Supp. 780 (S.D.N.Y. 1949), was decided prior to the 1952 enactment of §§ 1488 and 1501. Therefore, it has no bearing on this Court's interpretation of the interaction between § 1488 and § 1501.

of U.S. citizenship will be retroactively deemed to have been effective as of the date of his Greek naturalization in the event that his CLN is approved, he cannot claim at this stage of the case that the Government has been arbitrary and capricious in withholding approval so far.[9]

## IV. Conclusion

For the foregoing reasons, the Government's motion to dismiss is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 24 and to close this case.

SO ORDERED.

Dated: May 6, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*

---

[9] To the extent that Belegrinos challenges USCIS's adjudication of his § 1481(a)(6) application, his claims must be dismissed. (Dkt. No. 30 ¶¶ 29–31.) First, because USCIS's decision to issue a CLN is a discretionary act, *see Sluss v. U.S. Citizenship & Immigration Servs.*, 899 F. Supp. 2d 37, 41 (D.D.C. 2012), Belegrinos's claims under the Mandamus Act or 5 U.S.C. § 706(1) must be dismissed for the same reasons discussed in the relevant sections.

Second, Belegrinos's challenge to USCIS's action as arbitrary and capricious also fails. "[T]he APA confers jurisdiction on federal courts to review 'final agency action.'" *Kingston v. Lynch*, 169 F. Supp. 3d 110, 113 (D.D.C. 2016) (quoting 5 U.S.C. § 704). And an agency action is not final if it "does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) (internal quotation marks omitted). Here, USCIS is still reviewing Belegrinos's application and therefore has not yet taken any final agency action. (Dkt. No. 30 at 227.)

Belegrinos's request for a declaratory judgment that he has lost his U.S. citizenship is also denied because he has failed to demonstrate that he has successfully expatriated under 8 U.S.C. §§ 1481(a)(1) and (a)(6).

14